## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**CAROLYN LEE**,

   *Plaintiff*,

v.

**CLARITY SERVICES, INC.**,

   *Defendant*.

Case No: 8:25-cv-00679

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW**, the Plaintiff, CAROLYN LEE ("Ms. Lee"), by and through her undersigned counsel, Seraph Legal, P.A., and complains of the Defendant, CLARITY SERVICES, INC. ("Clarity"), and in furtherance thereof states as follows:

## PRELIMINARY STATEMENT

1. This is an action brought by Ms. Lee against Clarity for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Clarity is subject to this Court's jurisdiction pursuant to § 48.193(1)(a)(1), Fla. Stat. and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida because Clarity committed the acts of which Ms. Lee complains in Polk County, Florida which is in the Middle District of Florida.

## PARTIES

### Ms. Lee

5. Ms. Lee is a natural person over the age of 18 residing in the City of Lakeland, Polk County, Florida and is *sui juris*.

6. Ms. Lee is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

### Clarity

7. Clarity is a Delaware corporation, with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

8. Clarity is registered to conduct business in the State of Florida, where its Registered Agent is CT Corporation System, 1200 South Pine Island Rd., Plantation, FL 32301.

9. Clarity is a *Consumer Reporting Agency* ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Clarity's Inaccurate Consumer Reports Regarding Ms. Lee

10. At some point in 2019, Clarity began maintaining a credit file on Ms. Lee.

11. On or about January 12, 2022, Clarity began reporting that Ms. Lee owed an outstanding loan balance of $309 to "Acima Digital."

| Field | Value | Field | Value |
|---|---|---|---|
| Account #: | [redacted] | Company: | Acima Digital |
| Account Type: | Lease | Credit Limit: | $0 |
| Ownership: | Individual | Current Loan Amount: | $1,371 |
| Number of Payments: | 12 | Current Balance: | $309 |
| Payment Frequency: | Weekly Only | Past Due: | $309 |
| Open Date: | 1/12/2022 | Actual Payment: | $0 |
| First Due Date: | | Next Payment Amount: | $309 |
| Last Update Date: | 5/31/2023 | Status: | Charge-Off |
| Delinquency Date: | 3/12/2023 | Closed Date: | 5/20/2023 |
| Payment History: | [redacted] | Closed Status: | |
| Comment: | | | |
| Consumer Dispute: | | | |

12. "Acima Digital" refers to Acima Digital, LLC, a financial services company which makes loans primarily to credit-challenged consumers who cannot qualify for traditional credit at interest rates most states consider usurious.

13. As of February 19, 2025, the "Acima Digital" tradeline indicated a "Current Loan Amount" of $1,371, a "Current Balance" of $309, a "Past Due" amount of $309, a "Next Payment Amount" of $309, a "Status" of Charge-Off, and a "last updated date" of May 31, 2023.

14. Thus, as of February 19, 2025, almost two years had passed since any update or change had been made to the Acima Digital tradeline.

15. Clarity's information is demonstrably false since, on or about July 17, 2024, Acima Digital, LLC agreed that Ms. Lee's loan was discharged.

16. Around this time, Acima Digital, LLC instructed Clarity to delete the tradeline from Ms. Lee's credit file.

17. Therefore, Clarity should not have included the "Acima Digital" tradeline in its reports about Ms. Lee at all, or alternatively, should have reduced the balance to $0 had it determined it should include the tradeline.

18. Clarity's inclusion of such inaccuracies in Ms. Lee's credit file is far from an isolated incident, as many of Clarity's consumer files contain information about loans with weekly or bi-weekly payment terms that have remained without update for three or more years.

19. As the above indicates, Clarity lacks reasonable procedures designed to ensure the maximum possible accuracy of the consumer reports it sells.

20. Unless Clarity requires lenders who issue loans with bi-weekly payment terms to update their tradelines on a regular basis, a considerable number of reports will contain outdated information that is no longer accurate.

21. The overwhelming majority of Clarity's data furnishers are short-term, small-dollar lenders like Acima Digital.

### Other Inaccuracies in Ms. Lee's Credit File

22. Clarity programmed its systems to report as much information about consumers as possible, with little regard for the quality or truthfulness of the data.

23. Ms. Lee's Clarity file contains numerous inaccuracies in addition to the Acima Digital tradeline.

24. For example, Clarity incorporated the years 1962 and 1990 under the header "Date Of Birth" into its credit file on Ms. Lee.

| Date Of Birth | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| /1962 | 1/5/2021 1:29:20 am EST j0czvs3hn0 | 2/8/2025 7:13:32 pm EST cm9e4330rf | 100 |
| /1990 | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 1 |

25. Clarity also incorporated a total of four different Florida driver's license numbers into its credit file on Ms. Lee.

| Driver's License Number and State | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| XXXXXXXXX8360 FL | 1/5/2021 1:29:20 am EST j0czvs3hn0 | 2/8/2025 7:13:32 pm EST cm9e4330rf | 55 |
| XXXXXXXXX8630 FL | 10/25/2023 6:45:30 pm EDT qnqjywafq2 | 9/26/2024 6:18:52 pm EDT 4v4gjq4zba | 12 |
| XXXXXXXXX6273 FL | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 1 |
| XXXXX9502 FL | 5/29/2024 9:21:35 pm EDT sckp2c4rvf | 5/29/2024 9:21:43 pm EDT xw7tc70dfg | 2 |

26. The first two driver's license numbers Clarity included in Ms. Lee's credit file end in the same four digits of "8630" followed by "FL" to indicate they are Florida driver's licenses, however, due to Clarity's redaction of the full driver's license numbers, it is not possible to verify how they differ.

Page 5 of 18

27. The third driver's license number ends in "6273," and the fourth, which ends in "9502," contains only nine digits when all Florida driver's license numbers contain 13 digits.

28. As another example of Clarity's lack of quality control, it incorporated a "Housing Status" of "OTHER" on October 26, 2023 and "UNKNOWN" on or about September 28, 2024 into Ms. Lee's credit file.

| Housing Status | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| OTHER | 10/26/2023  8:14:33 am EDT  0tn75vtz83 | 9/30/2024  2:35:52 pm EDT  dtp86mtj1z | 2 |
| OWN | 5/29/2024  9:21:35 pm EDT  sckp2c4rvf | 5/29/2024  9:21:43 pm EDT  xw7tc70dfg | 2 |
| RENT | 1/5/2021  1:29:20 am EST  j0czvs3hn0 | 2/8/2025  7:13:32 pm EST  cm9e4330rf | 60 |
| UNKNOWN | 9/28/2024  3:57:59 pm EDT  cxxxpfhh2h | 11/23/2024  3:43:02 pm EST  3b5dat41es | 2 |

29. On or about September 28, 2024, Clarity incorporated that Ms. Lee's "Pay Frequency" was "ANNUALLY" into its credit file, meaning Ms. Lee would only receive one paycheck per year if that information were accurate.

| Pay Frequency | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| ANNUALLY | 9/28/2024  3:57:59 pm EDT  cxxxpfhh2h | 11/23/2024  3:43:02 pm EST  3b5dat41es | 2 |

30. Clarity also included that the "Date of Next Paycheck" was "01/01/2001," a date more than 23 years in the past.

| Date of Next Paycheck | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| 01/01/2001 | 9/28/2024  3:57:59 pm EDT  cxxxpfhh2h | 11/23/2024  3:43:02 pm EST  3b5dat41es | 2 |

31. On eight separate occasions between October 11, 2023 and February 8, 2025, Clarity incorporated "0 Months" under the header "Months at Address" into its file on Ms. Lee, indicating that Ms. Lee had spent zero time at her current residence.

| Months at Address | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| 0 Months | 10/11/2023 8:10:27 am EDT e782z243am | 2/8/2025 7:11:59 pm EST d9capmt2e1 | 8 |

32. Clarity also incorporated "123 MAIN STREET, LAKELAND, FL" under the header "Employer Address" into its file on Ms. Lee.

| Employer Address | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| 123 MAIN STREET LAKELAND FL | 1/5/2021 1:29:55 am EST w1sd3x8m4z | 9/25/2024 8:28:00 pm EDT krcp3rpmwk | 3 |

33. "123 MAIN STREET, LAKELAND, FL" does not exist.

34. Upon information and belief, the "123 MAIN STREET" address is a placeholder Clarity's systems automatically insert when a data furnisher does not supply an address.

35. On or about November 10, 2023, Clarity incorporated "821 Months" under the header "Months at Employer" into its credit file on Ms. Lee, indicating Ms. Lee has worked for her employer for more than 68 years.

| Months at Employer | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| 0 Months | 10/11/2023 8:10:27 am EDT e782z243am | 2/8/2025 7:11:59 pm EST d9capmt2e1 | 10 |
| 9 Months | 1/5/2021 1:31:06 am EST y8be3hbs3a | 1/5/2021 1:31:06 am EST y8be3hbs3a | 1 |
| 11 Months | 9/26/2024 6:18:41 pm EDT d0rhqpadcs | 9/26/2024 6:18:41 pm EDT d0rhqpadcs | 1 |
| 13 Months | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 1 |
| 15 Months | 5/29/2024 9:21:35 pm EDT sckp2c4rvf | 5/29/2024 9:21:43 pm EDT xw7tc70dfg | 2 |
| 36 Months | 5/15/2023 6:59:40 am EDT 6x88vthh28 | 5/15/2023 6:59:40 am EDT 6x88vthh28 | 1 |
| 42 Months | 1/5/2021 1:29:20 am EST j0czvs3hn0 | 9/28/2021 7:53:39 am EDT 9j3bfw9j2v | 2 |
| 60 Months | 4/26/2022 3:02:33 pm EDT 28hdfjk3z4 | 2/8/2025 7:13:32 pm EST cm9e4330rf | 33 |
| 61 Months | 12/14/2023 8:53:12 pm EST wzw1te5j7k | 12/14/2023 8:53:32 pm EST 02dx9css5b | 2 |
| 72 Months | 1/5/2021 1:29:55 am EST w1sd3x8m4z | 9/30/2024 2:35:52 pm EDT dtp86mtj1z | 6 |
| 74 Months | 12/7/2024 8:19:04 am EST t3wb4frtkm | 12/7/2024 8:19:04 am EST t3wb4frtkm | 1 |
| 75 Months | 1/9/2025 1:32:27 pm EST 8pe4pfe31w | 1/9/2025 1:33:03 pm EST 1apqz2nm9m | 2 |
| 120 Months | 4/26/2022 3:02:54 pm EDT 20dbyz5znj | 2/8/2025 7:12:51 pm EST 99n1ckqzn6 | 10 |
| 121 Months | 12/14/2023 8:54:11 pm EST 8j3j2nakrv | 12/14/2023 8:54:11 pm EST 8j3j2nakrv | 1 |
| 144 Months | 10/26/2023 8:13:46 am EDT 2z8phbsrn7 | 10/26/2023 8:13:46 am EDT 2z8phbsrn7 | 1 |
| 147 Months | 1/9/2025 1:32:08 pm EST vav9r6btyp | 1/9/2025 1:32:08 pm EST vav9r6btyp | 1 |
| 276 Months | 9/25/2024 8:28:00 pm EDT krcp3rpmwk | 9/25/2024 8:28:00 pm EDT krcp3rpmwk | 1 |
| 413 Months | 11/10/2023 4:19:20 pm EST rycx1gc8ym | 11/10/2023 4:19:20 pm EST rycx1gc8ym | 1 |
| 821 Months | 11/10/2023 4:18:07 pm EST z0heek62ma | 11/10/2023 4:18:07 pm EST z0heek62ma | 1 |

36.     Ms. Lee could not possibly have worked for her current employer for so many years given her current age.

37.     In addition to its inclusion of "821 Months" in Ms. Lee's credit file, Clarity also included wildly varying information under the same header with different values sometimes reported mere seconds apart.

38.     Likewise, Clarity incorporated substantially different monthly income amounts for Ms. Lee under the header "Net Monthly Income," sometimes minutes apart on the same date.

| Net Monthly Income | First Reported (Date/Time/Tracking #) | Last Reported (Date/Time/Tracking #) | # of Times Reported |
|---|---|---|---|
| $1,200.00 | 10/17/2024 2:52:27 pm EDT h2gdzmsepq | 10/29/2024 11:56:32 am EDT mn6jm72n88 | 2 |
| $1,600.00 | 1/26/2021 1:59:05 pm EST pmb196my7g | 1/26/2021 1:59:05 pm EST pmb196my7g | 1 |
| $1,999.00 | 9/28/2024 3:57:59 pm EDT cxxxpfhh2h | 9/28/2024 3:57:59 pm EDT cxxxpfhh2h | 1 |
| $2,150.00 | 5/15/2023 6:59:40 am EDT 6x88vthh28 | 5/15/2023 6:59:40 am EDT 6x88vthh28 | 1 |
| $2,200.00 | 11/10/2023 4:18:07 pm EST z0heek62ma | 9/26/2024 7:48:43 pm EDT 7n7x4w9xcn | 3 |
| $2,416.00 | 11/23/2024 3:43:00 pm EST tbm0j6r3fp | 11/23/2024 3:43:02 pm EST 3b5dat41es | 2 |
| $2,473.00 | 9/28/2021 7:53:39 am EDT 9j3bfw9j2v | 9/28/2021 7:53:39 am EDT 9j3bfw9j2v | 1 |
| $2,500.00 | 1/5/2021 1:29:20 am EST j0czvs3hn0 | 10/11/2024 3:50:29 pm EDT t03mzvf4f2 | 9 |
| $2,709.00 | 9/27/2024 1:33:28 pm EDT 49bdtnwa8q | 9/27/2024 1:33:28 pm EDT 49bdtnwa8q | 1 |
| $3,000.00 | 1/5/2021 1:31:06 am EST y8be3hbs3a | 4/26/2022 3:02:54 pm EDT 20dbyz5znj | 6 |
| $3,300.00 | 1/5/2021 1:29:55 am EST w1sd3x8m4z | 1/5/2021 1:29:55 am EST w1sd3x8m4z | 1 |
| $3,500.00 | 9/21/2023 7:10:25 pm EDT kt108bnjj4 | 2/8/2025 7:13:32 pm EST cm9e4330rf | 36 |
| $4,700.00 | 5/29/2024 9:21:35 pm EDT sckp2c4rvf | 5/29/2024 9:21:43 pm EDT xw7tc70dfg | 2 |
| $4,900.00 | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 8/8/2024 6:07:52 pm EDT 8gtsbv0b5t | 1 |
| $5,500.00 | 12/7/2024 8:19:04 am EST t3wb4frtkm | 1/9/2025 1:32:27 pm EST 8pe4pfe31w | 3 |
| $5,958.00 | 1/9/2025 1:33:03 pm EST 1apqz2nm9m | 1/9/2025 1:33:03 pm EST 1apqz2nm9m | 1 |

39. The consumer credit disclosure Ms. Lee received from Clarity on or about February 19, 2025 establishes that Clarity sold dozens of reports regarding Ms. Lee in the past two years.

40. Many of those reports contained the inaccurate Acima Digital tradeline, and all reports contained false personal information about Ms. Lee including her employment history, housing status, work address, and more.

41. As a subsidiary of Experian Information Solutions ("Experian"), one of the largest CRAs in the world, Clarity operates in stark contrast to its parent company.

42. While Experian enforces "Metro 2" guidelines, industry standards which contain hundreds of pages of explanations regarding how to report information

covering almost every conceivable scenario, which other large CRAs use to serve as a common language, Clarity requires no such compliance and has no discernable quality-assurance standards.

43. Indeed, Clarity frequently reports lengths of employment and residential history that exceed one million years, in addition to other clearly false information.

### Clarity Fails to Make a Reasonable Investigation

44. Unlike its parent company, Clarity does not provide consumers with the ability to dispute inaccurate information online and consumers must send their disputes by mail.

45. Clarity does not utilize e-OSCAR, an online platform designed to resolve consumer disputes quickly, efficiently, and effectively.

46. Consequently, Clarity must utilize more labor-intensive methods to investigate disputes.

47. On or about December 12, 2024, Ms. Lee mailed a dispute to Clarity that included the creditor's name and a complete copy of the Acima tradeline as it appeared on her consumer disclosure.

48. Ms. Lee mailed her dispute to Clarity via certified mail, and tracking records from the Postal Service establish Clarity received Ms. Lee's dispute on or about December 17, 2024.

49. In her dispute, Ms. Lee explained she disputed the Acima tradeline based on a settlement agreement in which all parties agreed the loan balance was waived, effective July 2024.

50. As supporting evidence, Ms. Lee included a redacted version of the fully executed settlement agreement that included both her signature and that of Acima Digital's representative.

51. Upon receipt of Ms. Lee's dispute, the FCRA required Clarity to make a reasonable investigation into her dispute and report the results of the investigation back to her within 30 days. *See* 15 U.S.C. § 1681i(a)(1)(A).

52. As of the date of this filing, Ms. Lee has received no communication from Clarity regarding her dispute in December 2024.

53. Ms. Lee's review of her Clarity credit report in February of 2025 established Clarity is still reporting the Acima Digital tradeline without any change or notation of the dispute.

54. In February of 2025, Ms. Lee sent a subsequent dispute to Clarity.

55. Clarity responded with a form letter on February 25, 2025 which stated, in part, that Clarity had initiated a reinvestigation and that "based on the reinvestigation results, the information you identified has been deleted or corrected," but to also "please see additional details."

56. Presumably, the "additional details" were listed under the header "Actions Not Taken," which appears to list actions Clarity declined to take.

57. Listed under "ACTIONS NOT TAKEN" were "Dispute Account(s)," with the "Reason Action Not Taken" being "Full SSN Missing" and under "Resolution" Clarity stated "Provide Copy of Social Security Card."

58. The second item Clarity listed under "Action Requested" was "Choose an Item."

59. Finally, the dispute response ended with "Attached are your dispute results. If you have any questions about your Clarity File, please contact us."

60. Thus, despite *claiming* it had both investigated Ms. Lee's dispute and corrected or deleted the information, Clarity made no such investigation with respect to either of Ms. Lee's disputes.

61. Therefore, Clarity failed to make a reasonable investigation as required by the FCRA, § 1681i(a)(1)(A), since it failed to conduct any investigation at all.

62. The fact Clarity did not investigate Ms. Lee's disputes on two different occasions, even though Ms. Johnson provided a full, unredacted, verbatim copy of the tradelines exactly as they appeared on her credit report, plus supporting documentation, is patently *unreasonable*.

63. Clarity frequently fails to investigate consumer disputes, either ignoring them completely or, sometimes, sending a form letter to the consumer stating it could not identify what was being disputed, even when the consumer's dispute is readily identifiable. *See, e.g.*, *Tammy Owens vs. Clarity Services, Inc.*, filing #207635431, Hillsborough County, Florida, September 25, 2024 (dispute with copy of tradeline

from report resulted in Clarity stating it could not identify what account was being disputed).

64. The FCRA is clear in its requirement that, as a CRA, Clarity must prepare accurate reports:

> **Accuracy of Report.** Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. §1681e(b).

65. The FCRA required Clarity to follow reasonable procedures to ensure the maximum possible accuracy of the information Clarity reported concerning Ms. Lee.

66. When it sold reports regarding Ms. Lee in the past two years, Clarity knew, or should have known, that even under a best-case scenario it was selling out-of-date information it had gathered without regard to accuracy or completeness.

67. As a result of Clarity's actions, Ms. Lee has suffered damages, including lost financial opportunities, loss of credit, lower credit scores, significant emotional distress and aggravation, and damage to her reputation, in addition to wasted time and the postage expenses she incurred while attempting to correct her credit report.

68. Ms. Lee has hired the undersigned law firm to represent her in this matter and has it her right to fees and costs.

## COUNT I
## CLARITY'S WILLFUL VIOLATIONS OF 15 U.S.C. § 1681e(b)

69. Ms. Lee adopts and incorporates Paragraphs 1 – 68 as if fully restated herein.

70. Clarity violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to ensure the maximum possible accuracy of the consumer reports it sold regarding Ms. Lee, as it sold consumer reports that contained out-of-date information regarding a loan for which Clarity should have deleted the tradeline or updated it to reflect a $0.00 balance.

71. Clarity further violated 15 U.S.C. § 1681e(b) when it sold consumer reports about Ms. Lee that contained inaccurate personal information.

72. Numerous consumers have sued Clarity for similar violations, and Clarity knows that it frequently sells reports with out-of-date, false tradeline information.

73. Clarity's conduct was either willful, or performed with a reckless disregard for Ms. Lee's rights under the FCRA.

74. As a result of its conduct, Clarity is liable to Ms. Lee for the greater of Ms. Lee's actual damages or statutory damages of up to $1,000 for *each occurrence*, punitive damages, reasonable attorney's fees, and costs, per 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Lee respectfully requests this Honorable Court enter judgment against Clarity for:

    a. The greater of Ms. Lee's actual damages and statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

    b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

    c. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3); and,

    d. Such other relief that this Court deems just and proper.

## COUNT II
## CLARITY'S NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681e(b)
### (Pled in the Alternative to Count I)

75. Ms. Lee adopts and incorporates Paragraphs 1 – 68 as if fully restated herein, and pled strictly in the alternative to Count I.

76. Clarity violated 15 U.S.C. § 1681e(b) when it failed to follow reasonable procedures to ensure the maximum possible accuracy of the consumer reports it sold regarding Ms. Lee, as it sold consumer reports that contained out-of-date information regarding a loan for which Clarity should have deleted the tradeline or updated it to reflect a $0.00 balance.

77. Clarity further violated 15 U.S.C. § 1681e(b) when it sold consumer reports about Ms. Lee that contained inaccurate personal information.

78. Clarity owed Ms. Lee a legal duty to utilize reasonable procedures to ensure the maximum possible accuracy of its consumer reports regarding Ms. Lee.

79. Clarity breached this duty when it sold consumer reports about Ms. Lee that contained out-of-date tradeline information for a loan for which Clarity should

have deleted the tradeline or updated it to reflect a $0.00 balance, as well as other inaccurate personal information.

80. Clarity acted negligently and pursuant to 15 U.S.C. § 1681o, Ms. Lee is entitled to her actual damages, attorney's fees, and costs.

81. **WHEREFORE**, Ms. Lee respectfully requests this Honorable Court enter judgment against Clarity for:

   a. Actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

   b. Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and

   c. Such other relief that this Court deems just and proper.

## COUNT III
## CLARITY'S WILLFUL VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)

82. Ms. Lee adopts and incorporates Paragraphs 1 – 68 as if fully restated herein.

83. Clarity violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into Ms. Lee's two disputes of the Acima Digital tradeline, and in one instance, failed to respond to her dispute at all.

84. Clarity's conduct was a result of its typical practice, which frequently results in Clarity not conducting any investigation into a consumer's dispute or requesting information the consumer already provided.

85. Clarity's conduct was thus willful and intentional, or, alternatively, performed with a reckless disregard for its duties under the FCRA to make reasonable investigations of consumer disputes.

86. Accordingly, Clarity is liable to Ms. Lee for the greater of her actual damages and statutory damages of up to $1,000 for each occurrence, as well as punitive damages, reasonable attorney's fees, and costs pursuant to 15 U.S.C. § 1681n.

**WHEREFORE**, Ms. Lee respectfully requests this Honorable Court enter judgment against Clarity for:

   a. The greater of Ms. Lee's actual damages or statutory damages of $1,000 per incident pursuant to 15 U.S.C. § 1681n(a)(1)(A);

   b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

   c. Reasonable costs and attorney's fees pursuant to 15 U.S.C. §1681n(a)(3); and,

   d. Such other relief that this Court deems just and proper.

## COUNT IV
## CLARITY'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)(1)(A)
### (Pled in the Alternative to Count III)

87. Ms. Lee adopts and incorporates Paragraphs 1 – 68 as if fully restated herein.

88. Clarity violated 15 U.S.C. § 1681i(a)(1)(A) when it failed to conduct a reasonable investigation into Ms. Lee's dispute of the Acima Digital tradeline and in one instance, failed to respond to her dispute at all.

89. Clarity owed Ms. Lee a legal duty to conduct a reasonable investigation into her dispute.

90. Clarity breached this duty when it failed to investigate or respond to her dispute.

91. Therefore, Clarity acted negligently, and Ms. Lee is entitled to her actual damages, attorney's fees, and costs pursuant to 15 U.S.C. § 1681o.

**WHEREFORE**, Ms. Lee respectfully requests this Honorable Court enter judgment against Clarity for:

a. Ms. Lee's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Reasonable costs and attorney's fees pursuant to 15 U.S.C. § 1681o(a)(2); and,

c. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on March 19, 2025, by:

**SERAPH LEGAL, P.A.**

*/s/ Megan A. Rosenberg*
Megan A. Rosenberg, Esq.
Florida Bar No.: 1005213
MRosenberg@seraphlegal.com
2124 W. Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230 (Ext: 404)
Fax: 855-500-0705
*Counsel for Plaintiff*